UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ITA A. UDEOBONG d/b/a MIDLAND CARE MEDICAL SUPPLY, On Behalf of All Others Similarly Situated, as well as on Behalf of the General Public and Acting on the Public Interest,<br><br>Plaintiff,<br>v.<br><br>ALBERT HAWKINS, RALPH C. LONGMIRE, ARACELI BALLADARES, in their individual and official capacities, and the TEXAS HEALTH AND HUMAN SERVICES COMMISSION, a governmental entity of the State of Texas,<br><br>Defendants. | CIVIL ACTION NO. H-08-1833 |

## MEMORANDUM AND ORDER

Before the Court is a Motion to Dismiss or Transfer filed by Defendants Hawkins et al. After considering the parties' filings and the applicable law, the Court finds that the motion, (Doc. No. 7), should be granted in part and denied in part.

I.    BACKGROUND

Plaintiff Ita A. Udeobong d/b/a Midland Care Medical Supply & Equipment, is a medical equipment supplier for Medicaid recipients in Stafford, Texas. In October 2007, Texas Health and Human Services Commission ("HHSC") notified Plaintiff that, after an investigation of his claims by the Office of Inspector General ("OIG"), HHSC had determined there was prima facie evidence that Plaintiff failed to comply with Texas Medicaid Program requirements, and that he billed for services not rendered, and for services in excess of actual quantities delivered. (Pl. Compl. Ex. A.) HHSC issued a

1

notice of hold on all payments pending the conclusion of investigation and legal proceedings between Plaintiff and HHSC. (Pl. Compl. ¶ 18, Ex. A.) Plaintiff claims that HHSC is withholding over $135,000 and, consequently, Plaintiff's business has been temporarily shut down. (Pl. Compl. ¶ 23.)

Plaintiff alleges he timely requested an administrative appeal to dispute the payment hold. (Pl. Compl. ¶ 19.)[1] Plaintiff met with HHSC for an informal review in Austin. (Pl. Resp. ¶ 8, Doc. No. 9.) Plaintiff was told that he could not contest Medicaid liability in the context of an appeal of the payment hold sanction because HHSC has not yet made a final determination on the alleged Medicaid liability. (Pl. Compl. ¶¶ 20-21.)

Plaintiff subsequently filed this action in federal court under 28 U.S.C. § 1983 and the Texas and U.S. Constitutions. He sued HHSC and three HHSC officials: Albert Hawkins, Commissioner of the HHSC, Ralph Longmire, Sanctions Manager in the HHSC OIG, and Araceli Balladares, Sanctions Specialist in the HHSC OIG, in their official and individual capacities (collectively "HHSC"). Plaintiff alleges an unlawful taking and violations of his due process rights under the Fourteenth Amendment of the Constitution, Article I § 19 of the Texas Constitution, and § 1983. Plaintiff seeks damages, declaratory and injunctive relief, costs, and attorneys fees. (Pl. Compl. ¶ 65.)

## II.   VENUE

### A. Motion to Dismiss

Defendants move to dismiss the case for improper venue under Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1406(a), asserting that venue is improper in the

---

[1] Director of the Chief Counsel Division, Michael Garbarino, testifies via affidavit that Plaintiff, either himself or via counsel, did not file a written request with the OIG for an expedited administrative hearing. (Garbarino Aff. ¶ 7.) As this is a Motion to Dismiss, however, this affidavit will be excluded. The Motion is therefore not converted into a Motion for Summary Judgment. *See* FED. R. CIV. P. 12(d).

2

Southern District of Texas under 28 U.S.C. § 1391(b)(2). They argue that none of the events took place in the Southern District because the actions complained of include implementation of regulation, policy, and customs, and all of these actions took place at the headquarters of the HHSC in Austin, in the Western District of Texas. In addition, all of the Defendants have their offices in the Western District and all of the decisions relevant to this case took place in Austin. (Doc. No. 7, Ex. A.) Plaintiff claims that venue is proper in the Southern District under 28 U.S.C. § 1392(b)(2) because his place of business is Stafford, Texas, in the Southern District, and therefore Defendants' actions caused due process violations in Stafford. Further, he argues that, because Defendant HHSC's regulatory authority and enforcement responsibilities extend to the Southern District, venue is proper here.

### A. Standard

District courts in this circuit are divided over which party bears the burden of proof with regard to venue after a Rule 12(b)(3) motion has been made.[2] The view that the burden should be placed on the plaintiff has been gaining approval, and therefore, will be applied here. *See also*, 5B WRIGHT & MILLER, FED. PRAC & PROC. § 1352 (2004) (approving placing the burden on the plaintiff).

The venue statute provides that "[a] civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be

---

[2] *Compare Texas Marine & Brokerage, Inc. v. Euton*, 120 F. Supp. 2d 611 (E.D. Tex. 2000), *Sanders v. Seal Fleet, Inc.*, 998 F. Supp. 729 (E.D. Tex. 1998), and *Bounty-Full Entm't, Inc. v. Forever Blue Entm't Group, Inc.*, 923 F. Supp. 950 (S.D. Tex. 1996) (all holding that a defendant moving to dismiss under Rule 12(b)(3) bears the burden of showing improper venue), *with Banks v. F.D.I.C.*, No. 3:08-cv-1076-G, 2009 WL 289604 (N.D. Tex. Feb. 2, 2009); *Devon Energy Production Co., L.P. v. GlobalSantaFe South America*, No. H-06-2992, 2007 WL 1341451, *2 (S.D.Tex. May 4, 2007); *Norsworthy v. Mystik Transp., Inc.*, 430 F. Supp. 2d 631 (E.D. Tex. 2006), *Langton v. Cbeyond Commc'n, L.L.C.*, 282 F. Supp. 2d 504 (E.D. Tex. 2003) (holding that the plaintiff bears the burden once a motion to dismiss for improper venue has been made).

brought only in ... (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b). Prior to 1990, the statute required venue in "*the* judicial district ... in which the claim arose" (emphasis added), but now allows more than one proper venue.

In analyzing where the event or omissions occurred, the circuits are split. The Eighth Circuit focuses on relevant activities of the defendant to examine the effects of the challenged action; many other circuits take a holistic approach. *Compare Woodke v. Dahm*, 70 F.3d 983, 985 (8th Cir. 1995) (rejecting plaintiff's contention that venue should lie where he felt the effects of the alleged Lanham Act violation); *Seariver Maritime Financial Holdings, Inc. v. Pena*, 952 F.Supp. 455, 460 (S.D. Tex. 1996); *with Uffner v. La Reunion Francaise, S.A.*, 244 F.3d 38, 42-43 (1st Cir. 2001); *Bates v. C & S Adjusters, Inc.*, 980 F.2d 865, 868 (2d Cir. 1992); *Cottman Transmission Sys. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994); *Mitrano v. Hawes*, 377 F.3d 402, 406 (4th Cir. 2004) (allowing venue where the plaintiff performed his work under the contract at issue); *First Mich. Corp. v. Bramlet,* 141 F.3d 260, 263 (6th Cir. 1998). The amendment of the statute liberalized the venue analysis. In the spirit of this liberalization, the Court will focus its analysis on the chain of events that led up to and includes the claim at issue rather than a narrow focus on the actions of the defendant.

In tort actions, venue is proper where the alleged injury occurred. The Supreme Court has explained that § 1983 actions are similar to personal injury torts. *Wilson v. Garcia,* 471 U.S. 261, 278 (1985), *superceded by statute on other grounds* (drawing an analogy between personal injury torts and § 1983 claims); *Carey v. Piphus*, 435 U.S. 247, 253 (U.S. 1978); *Imbler v. Pachtman,* 424 U.S. 409, 417 (1976) (stating that § 1983

creates a species of tort liability for violations of constitutional rights). Where a plaintiff complains of a government's action that has consequences under § 1983, because of its resemblance to a tort cause of action, venue may be proper in the district where the effects are felt. *See City of Los Angeles v. County of Kern*, No. CV 06 5094 GAF(VBKX), 2006 WL 3073172, *5 (C.D.Cal. Oct. 24, 2006).

In addition, courts outside the Fifth Circuit hold that, when challenging the actions of state government officials, proper venue lies both at the government's offices and where the effects of the decision are felt. *See, e.g., Central Valley Chrysler-Jeep, Inc. v. Witherspoon*, No. CV-F-04-6663 REC, 2005 WL 2709508, *7 (E.D.Cal. Oct. 20, 2005) (finding venue in the Fresno Division where automobile dealerships, located there, challenged a decision of the California Air Resources Board, located in the Sacramento Division); *McClure v. Manchin,* 301 F.Supp.2d 564, 568-69 (N.D. W.Va. 2003) (rejecting secretary of state's claim that a state election law challenge must be brought in the district where the state government sits); *Emison v. Catalano,* 951 F.Supp. 714, 721 (E.D.Pa.1996) (suits challenging official acts may be brought in the district where the civil penalty would be imposed); *School Dist. of Philadelphia v. Pennsylvania Milk Marketing Bd.,* 877 F.Supp. 245, 249 (E.D. Pa. 1995) (rejecting the argument that venue is proper only where official decision was made when the Middle District official relied on data from the Eastern District, and the allegedly unconstitutional overcharges would be imposed there).

Furthermore, this action is distinguishable from another Southern District of Texas case that involved a plaintiff's attempt to lay venue based on the effects of a government action. *See Seariver Maritime Financial Holdings, Inc. v. Pena*, 952 F.Supp.

455 (S.D. Tex. 1996). In *Seariver*, a Houston-based company alleged harm from an Alaska law that affected its vessel's ability to sail to the Prince William Sound in Alaska. The Court found that the harm to the Houston-based plaintiff did not "bear a sufficiently substantial connection to the events giving rise to plaintiff's claim." 952 F.Supp. at 458. Here, however, the HHSC regulations at issue directly implicate Plaintiff's business activities in Stafford, Texas, in the Southern District, not potential business that might take place in the waters of another state, as in *Seariver*.

Moreover, HHSC's letters that gave Plaintiff notice of the payment hold were mailed to Plaintiff's business in Stafford, and the Medicaid reimbursement that Plaintiff alleges that HHSC owed him purportedly should have flowed to Stafford. *See, e.g., Bates v. C & S Adjusters, Inc.,* 980 F.2d 865, 868 (2d Cir.1992) (finding venue proper in New York in suit for unfair collection practices where Pennsylvania collection agency mailed demand letter to debtor in New York). In addition, Plaintiff's challenged Medicaid actions that gave rise to the HHSC's litigation occurred in the Southern District. The Court finds that a substantial part of the events or omissions that gave rise to instant claims occurred in the Southern District. Plaintiff has filed his claim in a proper venue.

### B. Motion to Transfer

In the alternative, HHSC asks the Court to transfer the case to the Western District of the Texas under either 28 U.S.C. § 1406(a) or § 1404(a). Under Section 1406(a), a district court shall dismiss or transfer a case "laying venue in the wrong division or district." Under Section 1404(a), a correctly filed case may nevertheless be transferred to another district "[f]or the convenience of parties and witnesses, in the

6

interest of justice." The Court must now decide whether "the interest of justice" requires the case to be transferred.

Defendants, as the movants under Section 1404(a), bear the burden of establishing the propriety of the transfer and the superiority of the transferee district. *In re: Volkswagen of America, Inc.*, 545 F.3d 304, 314 (5th Cir. 2008) (en banc). The movant must "show good cause." *Id.* (citing *Humble Oil & Ref. Co. v. Bell Marine Serv.*, 321 F.2d 53, 56 (5th Cir. 1963)). Good cause means that "a moving party, in order to support its claim for a transfer, must satisfy the statutory requirements and clearly demonstrate that a transfer is '[f]or the convenience of parties and witnesses, in the interest of justice.' Thus, when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected." *Id.* at 315 (distinguishing the heavier burden under the *forum non conveniens* standard where the movant must show that the factors "substantially outweigh" the plaintiff's choice of venue). A plaintiff's choice of forum is given more deference when he has chosen his home forum. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-56 (1981).

The Supreme Court set forth private and public factors to be weighed in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947), and reaffirmed them in *Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981). The private interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen of America, Inc.*, 545 F.3d 304 at 314 (citing *Piper Aircraft*, 454 U.S. at 241 n. 6). The public interest factors are: "(1) the administrative difficulties flowing from

7

court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id.*

1. **Private factors**

The private *Gulf Oil* factors relate generally to the practical aspects of litigation – cost, location of evidence and witnesses, etc. Defendants assert that, because they are headquartered in the Western District, all of the relevant documents and witnesses are located there, including the Defendants and other employees with knowledge of the events and regulations at issue. Further, HHSC investigated the alleged non-compliance with the Texas Medicaid Program requirements in the Western District.

As to factors one and three, many of Defendants' witnesses will have to travel more than 100 miles if the Court keeps the case, but will not if it transfers it to the Western District. In that circumstance, conversely, because Plaintiff is based in the Southern District, documents and witnesses from his offices will have to be transported to the Western District. While modern technology reduces the burden of using distant evidence, the burden remains. *In re Volkswagen*, 545 F.3d at 316. On balance, however, Defendants have not established that these two factors demonstrate that the Western District is clearly more convenient.

As to element two, while any non-party witnesses in Austin would be outside the Southern District of Texas's subpoena power, and trial subpoenas would be subject to motions to quash, Defendants have not provided evidence that any non-party witnesses are likely to appear in the case. FED. R. CIV. P. 45(c)(3)(A)(ii); FED. R. CIV. P. 45 (c)(3)(B)(ii) (allowing a motion to quash for a witness who would incur substantial

expense to travel more than 100 miles to appear). Defendants have not established that the Western District is clearly more convenient for purposes of compulsory process.

As to element four, this case has been pending before the Court since June 2008. In order to establish prejudice from delay, the party must establish the prejudice with clear and convincing evidence. *In re Horsehoe Entertainment*, 337 F.3d 429, 434 (5th Cir. 2003). Although a transfer might reset the trial setting, Plaintiff has not demonstrated that a delay of a few months in the trial setting clearly establishes prejudice such that this factor weighs in favor of a particular forum.

## 2. Public factors

The public factors set forth in *Gulf Oil* and *Piper* are, again: 1) the administrative difficulties flowing from court congestion; 2) the local interest in having localized interests decided at home; 3) the familiarity of the forum with the law that will govern the case; and 4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law. *Piper*, 454 U.S. at 241 n.6. Defendants do not argue that the first, third, or fourth factors favor the Western District, nor could they credibly do so. The Court has no reason to suspect that the Southern District is more congested than the Western; that either forum has a superior ability to interpret the law applicable in this case; or that foreign law will play a role in this case. With regard to the second factor, HHSC explains that there is another case pending before the Western District, Austin Division, that implicates similar regulations and policies[3] and that such case, originally filed in Dallas, was transferred to the Austin Division.

---

[3] *Personal Care Products, Inc. v. Albert Hawkins, et al.*, Cause No. A-07-cv-1020-LY (Western District, Austin Division).

9

The Court agrees that the Western District has an interest in a case involving these Defendants. However, given that the alleged constitutional violation involved actions in both districts, the Southern District has an interest as well. Further, while Defendants are not residents of the Southern District, their regulatory authority extends here. The Court finds that the public factors are evenly balanced between the parties and the private factors tilt only slightly in favor of transfer. Therefore, the Court must respect Plaintiff's choice of venue, and deny discretionary transfer to the Western District.

## III. SUBJECT MATTER JURISDICTION

Defendants argues that Plaintiff's case should be dismissed under F.R.C.P. 12(b)(1) for lack of subject matter jurisdiction.

### A. Standard

The court must dismiss a case when the plaintiff fails to establish subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). "It is incumbent on all federal courts to dismiss an action whenever it appears that subject matter jurisdiction is lacking." *Stockman v. Federal Election Com'n*, 138 F.3d 144, 151 (5th Cir. 1998). A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Mississippi, Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998). The burden of establishing federal jurisdiction rests on the party seeking the federal forum. *Stockman*, 138 F.3d at 151.

### B. Cause of Action Under the Constitution

Defendants argue that Plaintiff cannot successfully allege a due process cause of action under the Constitution without other statutory authority. They argue that it is well settled that the Constitution cannot establish a basis for relief on its own and thus

Plaintiff's claims must properly be alleged under § 1983. In response, Plaintiff argues that he does have a due process claim directly under the Constitution, relying on several Supreme Court cases that have found implied due process claims.

In limited circumstances, the Supreme Court has acknowledged direct causes of action under the U.S. Constitution for the Equal Protection Clause and the Due Process Clause of the Fourteenth Amendment. *See Davis v. Passman*, 442 U.S. 228, 243-44 (1979) (holding that a direct constitutional action may lie pursuant to the Fifth Amendment due process clause for employment discrimination claims against a congressperson); *Avery v. Midland County*, 390 U.S. 478, 479 (1968) (holding that a constitutional violation may lie pursuant to the equal protection clause, for unequal population voting districts). The federal courts, however, and the Fifth Circuit in particular, have been hesitant to find due process and equal protection causes of action arising directly under the Constitution. *See, e.g., Hearth Inc. v. Dep't Public Welfare*, 617 F.2d 381, 382-83 (5th Cir. 1980). When a plaintiff seeks redress for constitutional violations against municipalities or government actors, the "proper vehicle for these allegations is [42 U.S.C.] § 1983." *See, e.g., Burns-Toole v. Byrne*, 11 F.3d 1270, 1273 n.3 (5th Cir. 1994); *Berger v. City of New Orleans*, 273 F.3d 1095 (5th Cir. 2001) (not designated for publication); *Mitchell v. City of Houston, Tex.*, 57 Fed. App'x. 211 (5th Cir. 2003) (not designated for publication). Here, Plaintiff also properly asserted his alleged violations under § 1983. Plaintiff's direct constitutional due process claims will be dismissed.

### C. Sovereign Immunity

#### 1. HHSC

11

Defendants argue that claims against HHSC must be dismissed because the Eleventh Amendment provides a state immunity from suit unless the state has waived its immunity or it has been abrogated. *See Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 80 (2000); *Aguilar v. Tex. Dept. of Criminal Justice*, 160 F.3d 1052, 1054 (5th Cir. 1988). Congress has not abrogated a state's immunity for § 1983 actions. *See Quern v. Jordan*, 448 U.S. 332, 345 (1979). In response, Plaintiff argues that HHSC is not entitled to this immunity because it is not an "arm of the state."

"There is no bright-line test for determining whether a political entity is an 'arm of the State' for purposes of Eleventh Amendment immunity," *Vogt v. Bd. of Commr's Orleans Levee Dist.*, 294 F.3d 684, 689 (5th Cir. 2002). The Fifth Circuit has adopted a six-part test to analyze whether a government entity is an arm of the state. *See United Disaster Response, LLC v. Omni Pinnacle, LLC*, 511 F.3d 476, 479 (5th Cir. 2007) *Delahoussaye v. City of New Iberia*, 937 F.2d 144, 147 (5th Cir. 1991). Courts should consider six factors: (1) whether the state statutes and case law characterize the agency as an arm of the state; (2) the source of funds for the entity; (3) the degree of local autonomy the entity enjoys; (4) whether the entity is concerned primarily with local, as opposed to statewide, problems; (5) whether the entity has authority to sue and be sued in its own name; and (6) whether the entity has the right to hold and use property. *See Delahoussay*, 937 F.2d at 147-48.

Plaintiff argues that the burden is on Defendants to assert their immunity and that they have failed to do so.[4] Defendants, however, have provided facts and authority that support HHSC's claim of immunity. For example, Defendants note that HHSC is an

---

[4] Plaintiff argues that affirmative defenses must be pled and proved and must be raised in a responsive pleading before asserting them in a dispositive motion. FED. R. CIV. P. 12(b) allows a party to assert lack of subject-matter jurisdiction and failure to state a claim by motion.

agency of the State. *See* TEX. GOV'T CODE § 531.002 (Vernon 2004). In addition, Defendants cite a case in which the Fifth Circuit found that the Eleventh Amendment bars suit against the Texas Department of Human Services. *See Cronen v. Texas Dep't of Human Serv.*, 977 F.2d 934, 937 (5th Cir. 1992) (quoting *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)); *Hernandez v. Texas Dept. of Human Services*, 91 Fed. Appx. 934, 935-36 (5th Cir. 2004). In 2003, the Texas Department of Human Services was abolished and its services split into two agencies. One of these agencies, the HHSC, is responsible for Medicaid and for nutrition programs, including the food stamp program at issue in *Cronen*. *See* Tex. H.B. 2292, 78th Leg., R.S. (2003). HHSC uses federal, state, and local funds. TEX. GOV'T CODE § 531.002 (Vernon 2004). HHSC is primarily concerned with ensuring the delivery of state health and human services, and it is governed by a commission that is appointed by the governor with the advice and consent of the senate. TEX. GOV'T CODE §§ 531.002; 531.005 (Vernon 2004). In addition, before HHSC enters into high value contracts with other parties, the state must review the terms of the contract. TEX. GOV'T CODE § 531.018. Consequently, Defendants have met their burden and they are immune from suit under the Eleventh Amendment. HHSC must be dismissed from the case.

### 2. Individual Defendants and State Claims and Money Damages

Likewise, Defendants argue that federal claims for monetary damages and the state claims asserted against individual Defendants should be dismissed because these Defendants were sued in their official capacities. Plaintiff asserts that its claims are against individual Defendants in both their official and individual capacities and include

permissible claims for monetary damages against Defendants in their individual capacities and suits against them in their official capacities for injunctive relief.

Federal claims against state employees in their official capacity are tantamount to suits against the state and are only allowed for injunctive relief. *Ganther v. Ingle*, 75 F.3d 207, 209 (5th Cir. 1996); *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 96 (1984); *Edelman v. Jordan*, 415 U.S. 651, 665, 676 (1974). The Eleventh Amendment also bars claims, including those for injunctive relief, against state officials on the basis of state law. *Pennhurst*, 465 U.S. at 106; *Holloway v. Walker*, 765 F.2d 517, 525 (5th Cir. 1985). Plaintiff's claims against the individual Defendants in their official capacities for money damages and for violations of the Texas Constitution must be dismissed.

## IV. FAILURE TO STATE A CLAIM

### A. Standard

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6) (2008). When considering a Rule 12(b)(6) motion to dismiss, a court must "accept the complaint's well-pleaded facts as true and view them in the light most favorable to the plaintiff." *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1964-65 (2007)). Although the Court generally considers a motion to dismiss for failure to state a claim based on the face of the Complaint, the Court may also take notice of matters of

public record when considering a 12(b)(6) motion. *See Davis v. Bayless*, 70 F.3d 367, 372 n.3 (5th Cir. 1995); *Cinel v. Connick*, 15 F.3d 1338, 1343 n. 6 (5th Cir. 1994).

**B. Section 1983**

Defendants contend that states and state officials in their official capacities are not persons under § 1983. In addition, Defendants argue that Plaintiff failed to exhaust or even avail himself of his administrative remedies.[5] Plaintiff responds that exhaustion is not required under § 1983, that Defendants are persons under § 1983, and that he stated a valid claim by alleging that Defendants abused their authority by imposing sanctions to coerce payment of a liability while refusing to extend the appeal rights required by law. Plaintiff asserts that he "has no appeal rights" (Pl. Compl. ¶ 18), but also claims that he timely requested an administrative review and was told that he could not contest the alleged Medicaid liability in the appeal of the payment hold sanction. (Pl. Compl. ¶ 20.)

Texas law authorizes a "payment hold" if the agency determines that prima facie evidence exists that the Medicaid provider violated the Texas Administrative Code. *See* 1

---

[5] To the extent that Plaintiff has alleged a federal takings claim (in discussing its constitutional claims, Plaintiff asserts an "unlawful taking" under the federal due process clause and Tex. Const. Art. I § 19, the Texas due process clause, rather than Art. I § 17, the Texas takings clause) (Pl. Compl. ¶ 27), it is not ripe for adjudication at this time. A claim that government regulations effect a taking is not ripe until the government entity charged with implementing the regulations has reached a final decision, and the property owner has unsuccessfully attempted to obtain just compensation through the available and adequate procedures provided by the state. *Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson*, 473 U.S. 172, 193-96 (1985); *Urban Developers LLC v. City of Jackson, Miss.*, 468 F.3d 281, 292-293 (5th Cir. 2006). While the finality requirement does not apply to facial takings challenges, the exhaustion of state remedies requirement applies whether the plaintiffs allege a facial or an as-applied challenge. *See, e.g., County Concrete Corp. v. Town of Roxbury*, 442 F.3d 159, 168 (3d. Cir. 2006); *Sinclair Oil Corp. v. County of Santa Barbara*, 96 F.3d 401, 406 (9th Cir. 1996). Furthermore, the Texas Constitution provides an avenue for recovery under section 17. *See, e.g., Samaad v. City of Dallas*, 940 F.2d 925, 935 (5th Cir. 1991); *see also, Smith v. City of Houston*, 693 S.W.2d 753, 754 (Tex. App.— Houston [14 Dist.] 1985, Ref. N.R.E.) (holding that an ordinance's assessments were unconstitutional under Tex. Const. Art. 1 § 17.) As Plaintiff has not provided any evidence that this procedure is inadequate, he must exhaust his state remedies. *Sandy Creek Investors, Ltd. v. City of Jonestown, Tex.*, 325 F.3d 623, 626 (5th Cir. 2003); *Samaad* 940 F.2d at 934 (explaining that inadequate procedures are those that almost certainly will not justly compensate plaintiffs and the unsettled status of state law does not render the available procedures "inadequate"). Plaintiff commenced this action in federal court. He has failed to exhaust his state remedies and must pursue action through the state courts prior to asserting a federal takings claim.

Tex. Admin. Code § 371.1617, 371.1703(b). After receiving the notice of the payment hold, a Medicaid provider may obtain informal review and/or an administrative hearing. 1 Tex. Admin. Code § 371.1703(b).

Section 1983 prohibits the deprivation of any rights, privileges, or immunities secured by the Constitution and federal laws under color of state law. 42 U.S.C. § 1983. The Fourteenth Amendment to the United States Constitution provides that a State shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. To prevail on a procedural due process claim, the plaintiff must show that he has a recognized property or liberty interest and was deprived of that liberty or property interest without adequate notice or meaningful opportunity to be heard. *See Mathews v. Eldridge*, 424 U.S. 319, 332-35 (1976). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire" and "more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 755 (2005) (quoting *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577 (1972)); *Wilkinson v Austin*, 545 US. 209, 221 (2005) ("The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake."). A benefit is "not a protected entitlement if government officials may grant it or deny it in their discretion." *See Town of Castle Rock, Colo.*, 545 U.S. at 756 (collecting cases). Once the court determines the plaintiff has protected liberty or property interest, the process due is evaluated in reference to three factors: "(1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the

procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that additional or substitute procedural requirement would entail." *Wilkinson v. Austin*, 545 U.S. 209, 211 (2005) (citing *Mathews v. Eldridge*).

Here, Plaintiff has no property interest for which he was denied adequate process for the Medicaid payments pending investigation.[6] *See Yorktown Medical Laboratory, Inc. v. Perales* 948 F.2d 84, 89 (2d Cir. 1991); *Tekkno Laboratories, Inc. v. Perales*, 933 F.2d 1093 (2d Cir. 1991). *See also, Matter of Guiding Light Corp.*, 217 B.R. 493, 498 (Bktrcy. E.D. La. 1998); *Smith v. N. Louisiana Medical Review Ass'n*, 735 F.2d 168, 173 (5th Cir. 1984) (holding that a Medicare provider has no constitutionally protected interest in the "waiver of liability" presumption because "a provider has no reasonable expectation or entitlement to be paid on a bad claim not covered under the Medicare Act); *but see Tekkno Laboratories, Inc. v. Perales*, 933 F.2d 1093, 1099 (2d. Cir. 1991) (Oakes, J., concurring) (holding, based on an earlier Second Circuit case, *Oberlander v.*

---

[6] Even if the payment hold deprived Plaintiff of a protectable property interest, it is not clear that Plaintiff was denied due process—he received at least some process pending investigation. Plaintiff asserted that he timely requested an administrative appeal to dispute the payment, he filed an appeal, but from his complaint, it is not clear that Plaintiff followed through on his formal appeal. (Pl. Compl. ¶¶ 19-21.) In his Response to Defendant's Motion to Dismiss, Plaintiff contends that Defendant's failed to extend appeal rights as required by law because he could not contest the underlying merits of the liability, instead of whether the sanction action was correctly imposed: but the ability to contest the sanction is the only procedure due under Texas law until the investigation is complete. (Pl. Resp. at 10, Pl Compl. Ex. A.) Analyzing Plaintiff's claim under the *Mathews v. Eldridge* factors, the private interest at stake here is not particularly strong: a provider's financial need to be subsidized for the care of its Medicaid patients is only incidental to the Medicaid program. *See Cathedral Rock of North College Hill, Inc. v. Shalala*, 223 F.3d at 364. In addition, the risk of erroneous deprivation is sufficiently addressed in the scheme: the OIG is required to provide prima facie evidence of noncompliance with the Medicaid program prior to imposing a sanction and Plaintiff was allowed an opportunity to informally discuss the allegations. (Pl. Resp. at 11.); *see, e.g., McIntosh v. Partridge*, 540 F.3d 315 (5th Cir. 2008) (holding that there was no risk of erroneous deprivation because the school performed an investigation prior to termination and the plaintiff was allowed to respond to the conclusions of the report). The Texas government has a strong interest in protecting its budget by investigating and permitting payment holds on questionable payments. Even if there was a property right, Plaintiff was not denied due process in this case.

*Perales*, 740 F.2d 116 (2d. Cir. 1984), that a medical provider has a property right in Medicaid payments already rendered under an earlier New York regulatory regime). *See also Cathedral Rock of North College Hill, Inc. v. Shalala*, 223 F.3d 354, 365-66 (6th Cir. 2000) (holding that a Medicare or Medicaid provider is not necessarily entitled to a formal pre-termination hearing prior to its termination from the program collecting cases from the Third, Fourth, Seventh, and Tenth Circuits). Plaintiff has failed to state a due process claim.

## IV. CONCLUSION

Defendants' Motion to Dismiss is **DENIED** as to their Motion to Dismiss for Improper Venue and Motion to Transfer Venue. Defendants' Motion to Dismiss is **GRANTED** as to Plaintiff's claims against Defendants and Plaintiff's complaint is hereby **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas, on this the 19th day of February, 2009.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

**TO ENSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT.**